UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                             609-989-0478
United States Bankruptcy Judge                                     609-989-2259 Fax

September 13, 2010

Thomas P. Monahan, Jr. Esq.
Law Offices of Dennis A. Maycher, P.C.
935 River Drive
Garfield, N.J. 07026
Attorney for Wawel Savings Bank, Plaintiff

Cory Mitchell Gray, Esq.
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box 677
Florham Park, N.J. 07932
Attorney for Yale Factors, NJ, LLC, Defendant

      Re:    Wawel Savings Bank v. Yale Factors NJ LLC, et al.
               Ad. Pro. No.: 06-2003

Dear Counsel:

      This matter comes before the Court by way of a Judgment of the United States Court of Appeals for the Third Circuit vacating a portion of an Order of the United States District Court for the District of New Jersey (which had affirmed this Court's Order dated October 21, 2007) and remanded the matter for this Court's determination whether Yale Factors NJ, LLC ("Yale") qualifies as either a purchaser of instruments or a holder in due course for purposes of application of N.J.S.A. 12A:9-330(d) and N.J.S.A. 12A:9-331(a), respectively. For the following reasons, this Court finds that Yale cannot be considered either a purchaser of

instruments or a holder in due course and, thus, the Court will enter judgment again in favor of Plaintiff, Wawel Savings Bank ("Wawel").

## I. Background

Following a two-day bench trial in the adversary proceeding filed by Wawel[1], this Court found in favor of Wawel, stating that it was entitled to a judgment granting it priority in all accounts receivable proceeds presently held in escrow, as well as the proceeds of all outstanding accounts receivable. In addition, this Court found that Yale could not be considered a purchaser of instruments or a holder in due course because it did not establish that it had acted in good faith by observing reasonable commercial standards of fair dealing. Pertinently, this Court viewed the lien searches conducted by Yale, which omitted "Inc." from JTTT's full corporate name, as substandard. Yale appealed this Court's judgment to the United States District Court for the District of New Jersey, which affirmed. Yale then appealed to the United States Court of Appeals for the Third Circuit, which agreed with this Court's conclusion that Wawel had not authorized the sale of JTTT's accounts receivable free of its security interest, but vacated the judgment of the District Court affirming this Court's finding that Yale was neither a holder in due course nor a purchaser of instruments. Having determined that this Court applied an erroneous standard for determining good faith, the case was remanded to this Court to determine whether Yale qualifies as either a holder in due course or a purchaser of instruments and to resolve the good faith element of that analysis.[2]

---

[1] In the litigation, Wawel sought declaratory relief that its lien on Jersey Tractor Trailer Training Inc.'s ("JTTT") accounts receivable had priority over a lien held by Yale; that it was entitled to the proceeds of JTTT's accounts receivable that had been held in escrow following a state action filed by Yale; and that it was entitled to JTTT's outstanding accounts receivable until its lien was satisfied.

[2] As noted by the Third Circuit, the issue is whether "the lien searched conducted by Dunn & Bradstreet on Yale's behalf comported with reasonable commercial standards of fair dealing." *In re Jersey Tractor Trailer Training, Inc.,* 580 F.3d 147,156 (3d Cir. 2009)

2

The parties appeared for a status conference on February 16, 2010, and presented argument in support of their positions with respect to those issues remanded to this Court. The Court ruled that the record would be limited to the evidence presented at trial, but allowed the parties to submit supplemental briefs with respect to the issues on remand.

### III.    Discussion

Naturally, Yale argues that it is both a purchaser of instruments and a holder in due course. As pointed out by the Third Circuit, the elements of a purchaser of instruments are the same as those for a holder in due course, except that a party cannot be a holder in due course if it has knowledge that another party has a security interest in the collateral (unless the party does not have actual knowledge that the purchase violates the rights of the senior secured party.)

A holder in due course is one who takes an instrument for value, in good faith, and without notice of dishonor or any defense against or claim to it on the part of any person.[3] If those requirements are met, a holder in due course takes priority over an earlier security interest, even if perfected.[4] The same is true for a purchaser of instruments if the purchaser gives value and takes possession of the instrument in good faith and without knowledge that the purchase violates the rights of the secured party.[5] To be considered a purchaser of instruments, Yale must have given value and taken possession of the instruments in good faith and without knowledge that the purchase violates the rights of the secured party.[6]

---

[3] *Triffin v. Pomerantz Staffing Servs., LLC*, 370 N.J. Super. 301 (2004); see N.J.S.A. 9-102(b) and 3-302(a).
[4] N.J.S.A. 9-331(a).
[5] N.J.S.A. 9-330(d).
[6] In the initial judgment, this Court did not address whether Yale had purchased JTTT's accounts with notice of Wawel's security interest. Such a finding would preclude Yale's status as a holder in due course. Similarly, a finding that Yale had purchased the accounts with knowledge that its purchase violated the terms of the security agreement between Wawel and JTTT, would likewise bar Yale from being a § 9-330 purchaser of instruments. As discussed here, since this Court now determines that Yale was neither a holder nor purchaser of instruments (negotiable or otherwise), the Court again need not address the notice-related requirements of N.J.S.A. 12A:3-302 and 9-330(d). However, out of an abundance of caution and to facilitate resolution of future appeals, the Court notes

As a threshold matter, this Court must decide whether Yale is the holder of negotiable instruments or purchaser of instruments so as to fall within the ambit of either N.J.S.A. 12A:3-302 or N.J.S.A. 12A:9-330(d).  Unfortunately, had this issue been analyzed properly by the Court at the outset, the trial and subsequent appeals would have followed a far different course.  During pre-trial motions and at trial, counsel for Yale took the position, with minimal opposition, that the invoices requiring JTTT's customers to make payment for services rendered on individual factored accounts qualify as "instruments" for purposes of analysis under N.J.S.A. 12A:3-302 and 9-330.  This Court accepted Yale's argument, with no additional scrutiny, regarding the issue as being peripheral to the disposition of the matter.  Needless to say, the Court erred in this regard, as the Court now concludes that an invoice is not an instrument, as defined under either N.J.S.A. 12A:3-302 or N.J.S.A. 12A:9-102(47).  As a result, in order to prevail, Yale must establish that it is the holder or purchaser of something other than an account receivable, or the invoice memorializing same.  While Yale contends now that it is the holder of checks (instruments) representing the proceeds of the accounts, the trial record is not conclusive and thus Yale has not carried its burden.

N.J.S.A. 12A:9-102(2) defines "account" as a "right to payment of a monetary obligation" with respect to several categories of obligations (none of which apply here and, as such, are omitted for the purpose of brevity).  § 9-102(2) specifically excludes "(i) rights to payment evidenced by chattel paper or an instrument" as a type of account.  The UCC provides two definitions for the term "instruments."  For purposes of Article 9:

---

that the record does not support a finding that prior to the underlying transactions, Yale had knowledge, as defined in N.J.S.A. 12A:1-201(25)(c) [" A person "knows" or has "knowledge" of a fact when the person has actual knowledge of it. "], of Wawel's security interest or that its purchase of accounts violated the terms of extant security agreement.

> (47) "Instrument" means a negotiable instrument or any other
> writing that evidences a right to the payment of a monetary
> obligation, is not itself a security agreement or lease, and is of a
> type that in ordinary course of business is transferred by delivery
> with any necessary indorsement or assignment. The term does not
> include (i) investment property, (ii) letters of credit, or (iii)
> writings that evidence a right to payment arising out of the use of a
> credit or charge card or information contained on or for use with
> the card.

N.J.S.A 12A:9-102(47). In contrast, for purposes of Article 3, an "instrument" is a "negotiable instrument:" which is defined as:

> an unconditional promise or order to pay a fixed amount of money,
> with or without interest or other charges described in the promise
> or order, if it:
> (1) is payable to bearer or to order at the time it is issued or first
> comes into possession of a holder;
> (2) is payable on demand or at a definite time; and
> (3) does not state any other undertaking or instruction by the
> person promising or ordering payment to do any act in addition to
> the payment of money, but the promise or order may contain an
> undertaking or power to give, maintain, or protect collateral to
> secure payment, an authorization or power to the holder to confess
> judgment or realize on or dispose of collateral, or a waiver of the
> benefit of any law intended for the advantage or protection of an
> obligor.

N.J.S.A. 12A:3-104(a) and (b). Thus, a party seeking to establish its status as a holder in due course must demonstrate it is the holder of a negotiable instrument; in contrast, a § 9-330(d) purchaser of instruments need only establish that it purchased a non-negotiable instrument. In either case, however, the party must establish that it holds or has acquired an *instrument*.

At the outset, Yale argues that the invoices memorializing the accounts receivable are instruments as defined in Article 9. According to Yale, the invoices are writings that evidence a right to payment and that an account debtor owes money to the holder of the account receivable. This Court disagrees with Yale's analysis.

5

Accounts receivable are most often evidenced by the generation of an invoice. Invoices are statements which are nothing more than pieces of paper reflecting a record of a transaction. They are not transferable in the ordinary course of business. Invoices cannot be endorsed or transferred as a means of payment. Mere possession of an invoice does not have any legal significance or evidence a right to payment. While invoices are writings, they are not instruments under the UCC. There is no question that Yale purchased JTTT's accounts. It is quite a leap, unsupported by the statutory text or commentary to the UCC, to suggest that having purchased accounts, Yale, is *a posteriori* a purchaser of instruments.

As noted, the relevant subsection of 9-330 states that "except as otherwise provided in 12A:9-331(a), a purchaser of an instrument has priority over a security interest in the instrument perfected by a method other than possession if the purchaser gives value and takes possession of the instrument in good faith and without knowledge that the purchase violates the rights of the secured party. The commentary to this section suggests, however, that a purchaser of instruments is not the same as a purchaser of accounts. Comment 6 to N.J.S.A. 12A: 9-330 discusses whether a purchaser is required to undertake a search to satisfy the "good faith" requirement of the statute. The comment mentions that "there may be circumstances where the purchaser undertakes a search nevertheless, either on its own volition or because other considerations make it advisable to do so, e.g., where the purchaser also is *purchasing accounts*" (emphasis added). Clearly, the differentiation between "purchasers" and "purchasers of accounts" indicates that this section does not apply to the latter. Thus, because Yale is a purchaser of accounts to which § 9-330 does not apply, Yale is not afforded the protections of a purchaser of instruments under this section.

Alas, the Court's inquiry cannot end here, however. To the extent payments were made on the accounts purchased by Yale, such proceeds in the form of checks, may qualify as instruments for purposes of N.J.S.A. 12A:9-330(d). As stated previously, Yale purchased JTTT's accounts receivable pursuant to the factoring agreement. Yale was entitled to payment on these specific accounts and JTTT's customers were notified to pay Yale instead of JTTT. In fact, in instances where JTTT's customers continued to make payment to JTTT, the payments were forwarded to Yale. The Court must, therefore, determine whether Yale is a purchaser or holder in due course of any checks made as payment by JTTT's customers.

N.J.S.A. 12A:9-331(a) states, in relevant part, that "this article does not limit the rights of a holder in due course of a negotiable instrument, a holder to which a negotiable document of title has been duly negotiate, or a protected purchaser of a security. These holders or purchasers take priority over an earlier security interest, even if perfected, to the extent provided in Articles 3, 7 and 8." Thus, potential holders in due course are referred to Article 3. N.J.S.A. 12A:9-302 defines a holder in due course as

> (a) Subject to subsection (c) and Section 3-106(d), "holder in due course" means the holder of an instrument if:
>
> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good faith[7], (iii) without notice that the instrument is overdue or has been

---

[7] Once again, as with the prior discussion of the notice-related requirements under the UCC, the Court need not resolve whether Yale's conduct comported with applicable industry standards and reflected fair dealing. However, since this was one of the issues directed by the Third Circuit to be addressed on remand, the Court feels compelled to assist the litigants by explicitly detailing its finding that Yale's efforts at due diligence, which included its pre-transaction investigation and lien searches of JTTT's corporate name (albeit without "noisewords") by a reputable and well-recognized national search firm, satisfied all applicable commercial industry standards. This Court finds

> dishonored or that there is an uncured default with respect to
> payment of another instrument issued as part of the same series,
> (iv) without notice that the instrument contains an unauthorized
> signature or has been altered, (v) without notice of any claim to the
> instrument described in Section 3-306, and (vi) without notice that
> any party has a defense or claim in recoupment described in
> section 3-305(a).

Unfortunately, application of the pertinent statutory criteria to the evidence introduced at trial does not establish that Yale is either a holder in due course or purchaser of the account proceeds. Such findings require an examination of the checks at issue. The checks were neither submitted as exhibits to the summary judgment motions nor offered and admitted as evidence at trial. Pointedly, counsel for Yale in his last submission to the Court, acknowledges that such evidence is lacking: "those checks were likely not admitted into evidence, and the trial testimony focused on the rights of the respective parties in and to the accounts receivable (which were admitted into evidence) and the statements of account setting forth the amount of Yale's claim (which were also admitted into evidence)." On remand, this Court limited consideration of the evidence in this matter to the record established at trial. See Carter Jones Lumber Co. v. LTV Steel Co, 237 F.3d 745 (2001); In re Friedman, 436 F. Supp. 234 (D.C. Md. 1977) ("Upon remand, the decision whether or not to reopen the evidence is within the discretion of the bankruptcy judge.")[8] To be a holder in due course, Yale had to have physical possession of the checks. Those checks would have come to Yale directly from JTTT's customers or have been negotiated to Yale by JTTT. Without the actual checks, however, it is impossible to identify the

---

that Yale's actions would not, standing alone, bar a determination that it was a holder in due course or a purchaser of an instrument.

[8] In exercising discretion not to reopen the evidence to allow submission of checks or copies thereof, the Court notes that throughout the proceeding, in briefs and argument, Yale contended that the underlying invoices were instruments and never raised the issue of the checks being proceeds of the purchased accounts. In the Court's judgment, to permit the introduction of such evidence at this late juncture would unduly prejudice the interests of Wawel.

source of the funds held presently in escrow.  At the status conference held after this case was remanded, counsel for both parties acknowledged that the "world is those checks" and "the record must reflect that Yale held the checks."  The record does not so reflect.  Accordingly, on remand, judgment is granted in favor of Wawel and counsel is directed to submit a form of judgment.

                              Very truly yours,

                              Honorable Michael B. Kaplan
                              United States Bankruptcy Judge